UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21820-CIV-GOLD
MAGISTRATE JUDGE P. A. WHITE

MICHAEL EUGENE PITTS,       :

          Plaintiff,        :

v.                          :                    REPORT OF
                                            MAGISTRATE JUDGE
DAVIS HARRIS, et al.,       :

          Defendants.       :

_____

## I.   INTRODUCTION

Plaintiff Michael Eugene Pitts, a previously incarcerated state prisoner who is now on supervised release, filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 (DE#1), alleging that he received inadequate medical care while confined at Dade Correctional Institution ("DCI") between April 21, 2007, when he suffered a sports-related injury, and July 9, 2007, when he dated and signed the complaint.[1] After a Preliminary Report (DE#8) and an Order thereon (DE#14), the case remained pending against two defendants: Dr. Julio Poveda, M.D., a physician who attended to Pitts at DCI on various occasions during the period in question, and David Harris, who was DCI Warden at the time.

Allegations from Pitts' complaint were summarized in the Preliminary Report, and in a subsequent Report (DE#40) on a motion to dismiss by Dr. Poveda (DE#19), which was denied (see Order, DE#43).

In brief, Pitts alleged in the complaint that he injured his right hand and fingers (the 4th and 5th digits, i.e., the ring finger and pinkie, respectively) while on the DCI recreation yard on Saturday, April 21, 2007. A diagnostic test allegedly showed that the 4th finger was grossly dislocated, that there was ligament and nerve damage, and that the bones within the finger were laying

---

[1]     The deadlines set in the Court's Scheduling Order (DE#35) for completion of various pretrial procedures, including addition of parties or amendment of pleadings, have all passed; and the plaintiff did not amend his complaint. This Report therefore focuses on Pitts' claims against Dr. Poveda and Warden Harris based on the allegations in the operative pleading (DE# 1).

one atop the other. He alleged that although he reported to DCI Medical on several occasions, requesting that he be sent to a specialist so that his hand could be operated to repair the injury, no doctor or other person took any action to do this, and he waited in pain for more than 9 weeks until surgery was performed. This was despite his having filed a number of grievances with the Warden and the Medical Department at DCI, and the DOC in Tallahassee. He alleged that prior to the operation the responses to his grievances stated that "the matter was being addressed," but that "nothing was actually done to treat my severe injury."  He also alleged in his July 9, 2007 complaint that it had been two weeks since his operation, and that no one had checked to see if his finger was healing properly. He alleged that on July 5, after "repeated complaints to Medical that my hand was in pain" and that he feared it might be infected, the bandages were removed, the wound was cleaned, and it was discovered that the finger was infected and not healing correctly. He further alleged that he remained in continued pain.

**This Cause is before the Court upon: 1) a motion for summary judgment by Dr. Poveda (DE# 61),** with 4 exhibits (at DE#s 61-2 to 61-5), which are, respectively: Exhibit 1 (Pitts' 1/3/08 Deposition), Exhibit 2 (Dr. Poveda's Affidavit), Exhibit 3 (the contract between the Florida DOC and MHM Solutions, Inc., the entity hired to provide inmate health care at DCI and other prisons), and Exhibit 4 (Dr. Ben R. Thebaut, M.D.'s Affidavit, offered as an expert medical opinion)**; and 2) a motion for summary judgment by Warden Harris (DE# 62),** with two exhibits: Excerpts from Pitts' deposition (DE#62-2), and Thebaut's Affidavit (incorporated by reference).

By Court Order, the pro se plaintiff Pitts was advised of his right to respond in opposition to the motions for summary judgment by Poveda and Harris.[2]  The plaintiff Pitts filed a 5-page Response

---

[2]     Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

(DE#72, at pp. 1-4 and 62), with numerous supporting exhibits, consisting of prison and hospital medical records pertaining to Pitts; and requests/grievances and Responses thereto, from Pitts'

---

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily ren- ders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  (citations omitted)

Thus, in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non- moving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11 Cir.), <u>cert.</u> <u>denied</u>, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial <u>Fed.R.Civ.P.</u> 56(e); <u>Coleman v. Smith</u>, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Baldwin County, Alabama v. Purcell Corp.</u>, 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, <u>supra</u>).

Pursuant to <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11 Cir.1987), an Order of Instructions (DE#63) was entered, informing plaintiff Pitts as a *pro se* litigant, of his right to respond to the defendants' motions for summary  judgment. The Order (DE#63) specifically instructed Pitts regarding the requirements under <u>Fed.R.Civ.P.</u> 56 for a proper response to such motions.

use of the inmate grievance procedure (DE#70 at pp.5-8; DE#72 at pp. 5-61; and DE#73 at pp.1-45).

## II.   DISCUSSION

### A.   The Law Relating to Medical Claims In the Prison Context

### Causation

Title 42 U.S.C., Section 1983, requires an affirmative causal connection between an official's acts and an alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11 Cir. 1995); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11 Cir. 1995).

### Medical Indifference

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Whether an inmate's medical need requires attention as a matter of constitutional right depends upon its severity. See Estelle, supra, at 104-06. Generally, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11 Cir. 2003) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11 Cir. 1994)).

The standard may be met where there is a showing that jail officials denied or delayed an inmate from receiving necessary medical treatment for non-medical reasons, see Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11 Cir. 1985). In addition, officials' inordinate delay in providing necessary treatment, without medical explanation, may evidence deliberate indifference, Farrow v. West, 320 F.3d 1235, 1247 (11 Cir. 2003), and the standard may be met where there is intentional, unexplained delay in providing to access treatment for serious painful injuries, Brown v. Hughes, 894 F.2d 1533 (11 Cir. 1990), and cases cited therein.

In Estelle, the Supreme Court reasoned that "an inmate must

4

rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id., 429 U.S. at 103. Not every claim by a prisoner, asserting that he has not received adequate medical treatment, however, is sufficient to state a violation of the Eighth Amendment. McElligot v. Foley, 182 F.3d 1248, 1254 (11 Cir.1999). Negligence is not enough,[3] and a mere difference of opinion between an inmate and prison medical staff concerning his diagnosis and course of treatment does not rise to the level of a constitutional deprivation.[4] Thus, it is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. Estelle, supra; Adams v. Poag, 61 F.3d 1538 (11 Cir. 1995). In fact, once an inmate has received medical care, courts are hesitant to find that a constitutional violation has occurred. Hamm v. DeKalb County, 774 F.2d 1567, (11 Cir.), cert. denied, 475 U.S. 1096 (1986).

Treatment violates the Eighth Amendment only if it involves "something more than a medical judgment call, an accident, or an inadvertent failure," Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5 Cir. 1980). It must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to

---

[3]       It is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. A showing of conscious or callous indifference is required. Estelle, supra, 429 U.S. at 104-06; Daniels v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988).

[4]       The Courts have long recognized that a difference of opinion be-tween an inmate and the prison medical staff regarding medical matters, in-cluding the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and have consistently held that the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. Estelle v. Gamble, supra, at 107 ("matter[s] of medical judgment" do not give rise to a §1983 claim). See: Ledoux v. Davies, 961 F.2d 1536 (10 Cir. 1992) (inmate's claim he was denied medication was contradicted by his own statement, and inmate's belief that he needed additional medication other than that prescribed by treating physician was insufficient to establish constitutional violation); Ramos v. Lamm, 639 F.2d 559, 575 (10 Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), cert. denied, 450 U.S. 1041 (1981); Smart v. Villar, 547 F.2d 112, 114 (10 Cir. 1976) (same); Burns v. Head Jailor of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D. Ill., E.D. 1984) (exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable under §1983).

fundamental fairness." <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11 Cir. 1991). In order to show an objectively serious deprivation of medical care, the inmate must demonstrate: 1) an objectively serious medical need that, left unattended, poses a serious risk of harm; 2) that the response made by public officials to that need was poor enough to constitute an "unnecessary and wanton infliction of pain," and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law; and 3) an attitude of deliberate indifference, which shows that the defendants were aware of the facts from which a substantial risk of serious harm could be inferred, *and that they actually did draw that inference*. <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11 Cir. 2002). The deliberate indifference requirement is discussed further, below.

### The Eighth Amendment

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993)); <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1362 (11 Cir. 1999); <u>see also</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986) (holding that "the Due Process Clause affords ... no greater protection").

In <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1535 (11 Cir. 1993) the Court held that to prevail on an Eighth Amendment claim for damages in a civil rights suit, a plaintiff must prove three elements: 1) *an __objective__ element*, a condition that inflicted unnecessary pain or suffering, <u>Id.</u>, citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981); 2) *a __subjective__ element*, deliberate indifference on the part of the defendant(s) to that condition, <u>Id.</u>, citing <u>Wilson v. Seiter</u>, 501 U.S. 594 (1991); and 3) causation, <u>Id.</u>, citing <u>Williams v. Bennett</u>, 689 F.2d 1370, 1389-90 (11 Cir. 1982). Both the objective and subjective elements must be satisfied. <u>LaMarca</u>, <u>supra</u>, 995 F.2d at 1535, n. 17 (citing <u>Hudson v. McMillian</u>, ___ U.S. ___, 112 S.Ct. 995, 999-1000 (1992)).

Although the Constitution does not require comfortable pri-

sons, it does not permit inhumane ones. Farmer, supra, 511 U.S. at 832 (quoting Rhodes, supra, 452 U.S. at 349). Still, the Eighth Amendment does not authorize judicial reconsideration of "every governmental action affecting the interests or well-being of a prisoner," Whitley, 475 U.S. at 319; instead, "'[a]fter incarceration, only the "'unnecessary and wanton infliction of pain'"... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Id. at 319 (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citations omitted))). Crucial to establishing an "unnecessary and wanton infliction of pain" is some proof that officials acted with specific intent. The exact nature of the specific intent required depends on the type of claim at issue. Campbell v. Sikes, supra, 169 F.3d at 1363. This specific-intent requirement for an Eighth Amendment violation applies to claims of medical indifference. Campbell v. Sikes, supra, 169 F.3d at 1363-64.

As the Eleventh Circuit in Campbell v. Sikes observed, the Supreme Court in Wilson v. Seiter, and later Farmer v. Brennan, has "refined the inquiry" regarding satisfaction of the subjective element required for an Eighth Amendment deprivation. Campbell, supra, 169 F.3d at 1363. The Supreme Court explained in Wilson v. Seiter, that the Eighth Amendment applies only to punishments, and that prison conditions are only punishment if a mental element of punitive intent is shown, Wilson, supra, 501 U.S. at 300 ("If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify"). In Farmer v. Brennan, the Court provided further explanation of the mental state that is required for deliberate indifference, Farmer, supra, 511 U.S. at 837-38 (holding that a prison official cannot be found liable under the 8th Amendment for denying an inmate humane conditions unless he knows of and disregards an excessive risk to inmate health or safety; and he must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw the inference).

As the Eleventh Circuit has noted post-Farmer, proof that the

defendant should have perceived the risk, but did not, is insufficient. <u>Campbell</u> <u>supra</u>, at 1364 (citing <u>Farmer</u>, at 838); <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1491 (11 Cir. 1996) (the official must have a subjectively "'sufficiently culpable state of mind,'" and "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not...'") (quoting <u>Farmer</u>, <u>supra</u>, 511 U.S. at 834, 838).  Liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk." <u>Campbell</u>, <u>supra</u>, at 1364 (citing Farmer, at 837).

## B.  <u>ANALYSIS</u>

### 1.  <u>Dr. Poveda</u>

It appears that the gravamen of Pitts' July 9, 2007 complaint against Dr. Poveda is three-fold. First, as noted, <u>supra</u>, Pitts claims that he waited more than 9 weeks, from the time of his initial injury [April 21, 2007] until he had surgery [June 21, 2007], all the while receiving essentially no care. This, he contends, resulted in permanent injury. Second, Pitts claims that failure to properly check his hand between the June 21 surgery and July 5, 2007, resulted in further harm because the surgical wound became infected. Third, Pitts claims that he submitted grievances to the Warden's Office and to the Medical Department stating that he was in pain, and that nothing was done to alleviate his discomfort.

A review of the record, including medical documents submitted by plaintiff Pitts (DE#s 70, 72, 73), statements made by Pitts in his complaint (DE#1) and in his summary judgment response (DE#72, pp.3-4), and the defendants' exhibits including Pitts' deposition (DE#61-2), and the affidavits of Drs. Poveda and Thebaut (DE#s 61-3 and 61-5), reveals the following. On the weekend of April 21, 2007, inmate Pitts was injured when he was hit or kicked in the hand while playing goalkeeper in a soccer game. At deposition, he

8

recalled that the injury occurred on Saturday, which was April 21.[5] The June 21 surgery was performed 61 days [8 weeks and 5 days] after Pitts was first injured on the recreation yard. Dr. Poveda first learned of inmate Pitts' injury, and had his first contact with Pitts on May 10, some 19 days after he was hurt on the recreation yard. (Poveda Affid.).

The record shows that prior to that first appointment with Dr. Poveda, Pitts' condition was not ignored by the corrections and medical staff. On April 21 Pitts declared a medical emergency, and went directly from the soccer field to the DCI infirmary, where a nurse looked at his hand, and gave him an ice pack and Motrin to control swelling and pain. (Pitts Depo., T/49-50). On Monday, April 23, Pitts was seen by ARNP [Advanced Registered Nurse Practitioner] Dwares at the Doctor's Clinic. Pitts's 4th digit was observed to have "significant edema to MTP Joint + tenderness + ecchymosis to site" [swelling with tenderness and bruising/discoloration of the joint at the main knuckle of the ring finger]. The purpose of Dwares' assessment ["R/O Fx R 4th digit"] was to determine or rule out whether there was a fracture of the right 4th finger. Dwares splinted Pitts' finger and bandaged his hand, using a wooden tongue depressor and an ace wrap. Pitts was instructed to keep the finger elevated, and to use a sling; and a x-ray was scheduled, but the x-ray was not in fact taken until Friday, April 27. (Medical Record, DE#73, at p.7; DE#61-3, Poveda Affid.). It appears that on or about April 25, Pitts was placed on Confinement status and moved to a confinement unit. At deposition Pitts testified that this occurred because his urine test was positive for opiates (DE#61-2, T/51-56). Pitts claims the positive drug test was due to the Tylenol #3 he had been prescribed. (Id., T/52). On Friday 4/27 Pitts was seen at

---

[5]     In his motion, defendant Poveda refers to the injury having occurred "on or about Sunday, April 22, 2007" (DE#61, p.3), and defendant Harris also refers to April 22 as the date of the injury. In his complaint (DE# 1, at p.5) plaintiff does not refer to a day of the week, but states that April 21 was when he was hurt. A Monday, April 23, 2007 Chart entry from Pitts' medical record reveals that at the prison Doctor's Clinic he informed ARNP [Advanced Registered Nurse Practitioner] Dwares that he was hurt while playing soccer on Saturday (DE#73, p.7).  For purposes of this Report, the question of whether the injury occurred on Saturday (4/21) or Sunday (4/22) is not material to the claims against defendants Poveda and Harris and analysis of the same.

the jail clinic by Dr. Aguilar, who read the x-rays and continued Pitts' pain medication. Aguilar noted on the chart that the "right hand x-rays shows dislocation of 4th digital medial phalanx." In the chart, Dr. Aguilar wrote "refer to Orthopedist ASAP." (DE#73, p.7). A Consultation Request for an Orthopedic referral was completed by Dr. Aguilar on April 27. Such a referral for evaluation of Pitts by a specialist was coordinated by the Florida DOC, not by Dr. Poveda. (Consultation Request, DE#72 at p.8; DE#61-3, Poveda Affid.).[6] At deposition Pitts testified that following his placement in the Confinement Unit he re-injured his finger by hitting it on his bunk or locker in the middle of the night, after which the bone was "protruding sideways."(DE#61-2, T/69-70). On Tuesday, May 8, he went to sick call, and received an additional prescription for Tylenol #3, and his finger was re-splinted. (DE#61-3, Poveda Affid.; DE# 61-2, Pitts Depo. at T/72-73).  On Thursday, May 10, 2007, Dr. Poveda saw Pitts for the first time, and he authorized additional Tylenol #3 for pain. (Poveda Affid.). Pitts was already scheduled to see the Orthopedic specialist on Friday May 18, 2007; and Poveda saw no need for emergency care, since the earlier x-ray had not shown a fracture. (Poveda Affid.). Poveda nonetheless made a follow up/second request for Pitts to be evaluated by an orthopedic specialist, consistent with the DOC's policies. (Id.). When Pitts was taken by prison officials for the May 18, 2007 appointment the Orthopedist (Dr. Ovadia) was unable to see him, the appointment was rescheduled, and Ovadia saw him on May 25, 2007. (DE#61-2, Pitts Depo. At T/74-76). Pitts acknowledged at deposition that neither Dr. Poveda nor Dr. Aguilar had anything to do with the delay caused by Dr. Ovadia's inability to see him on May 18. (Pitts Depo. at T/74-75. On May 25, Dr. Ovadia evaluated Pitts and recommended surgery. (Poveda Affid.; Pitts Depo. at T/76). Dr. Ovadia did not have the surgery scheduled as an immediate emergency procedure, but rather set it to be performed nearly 4 weeks later,

---

[6]      On the copy of the 4/27 Consultation Request form which he has submitted as an exhibit, Pitts, in his own handwriting, made a notation ("forged signature"), in support of his contention that the patient signature on the form was not his.  At deposition, he also stated that the signature on the form is not his, but he acknowledged that he does not contest that on April 27 a referral to the Orthopedist was made, and that it was Dr. Aguilar who initiated the process. (DE#61-2, T/60-62).

on June 21, 2007. (Poveda Affid.; Pitts Depo. at T/82, 91-92; Operative Report at DE#70 and DE#73 pp.8-10).  At Deposition, Pitts acknowledged that Drs. Poveda and Aguilar are not orthopedic surgical specialists and that they therefore could not themselves have intervened and performed his surgery sooner. (Pitts Depo. at T/81-82). Pitts stated his opinion that he could have been taken to an emergency room or a hospital to be operated sooner (Id., T/81), but acknowledged that orthopedic hand surgery also could not have been done by emergency room staff. When asked at deposition if he had any reason to believe that Dr. Poveda did anything intentional-ly to delay his surgery (T/85), he at first refused to respond, stating I'm going to decline to answer that question at this time, until I retain counsel," and when asked again stated "I don't have to answer" (T/85). When counsel rephrased the question, and asked, "as you sit here today, do you have any reason or any evidence that suggests that Dr. Poveda intentionally delayed or refused to give you treatment, sir?" (T/85-86), Pitts responded, "Not that I can prove, no." (T/86).

The record shows that after he had returned to prison follow-ing the June 21 surgery, Pitts was taken to the infirmary in the early morning of June 22, 2007, for observation of pain.  He denied having received Dilaudid prescribed at the hospital, and he was given Motrin 800 at the infirmary. (Poveda Affid.; Pitts' Chrono-logical Record DE#73 at p.11). At 5:30 a.m. Dr. Poveda was called, and was informed by the nurse that Pitts was in pain, and Poveda telephonically prescribed Tylenol #3 for an additional 3 days. (Poveda Affid; Medical Record, DE#73 at p.11).  As noted on the medical chart, on July 3, a grievance was filed by Pitts, asking to see a physician. The grievance was approved, with a notation "appt. has been scheduled." (DE# 73, p.15). On July 6, he was seen at the Doctor's Clinic by ARNP Dwares, who made notations of Pitts statements/complaints that noone had looked at his hand, that it felt like it was "healing in an awkward direction," and that he needed pain medication. (Id.). ARNP Dwares noted that the forearm was in a cast and the right hand was in a large bulky dressing. Dwares undid the dressing, cleaned the surgical wound, removed ½ of Pitts' sutures, leaving the ones over the knuckle in place. He

noted that it was unclear whether the ecchymosis was from the
surgery or if the site was starting to get infected. Pitts' case
was discussed with Dr. Aguilar, a new dressing was applied,
antibiotics were ordered to cover the eventuality of infection, and
Pitts was directed to undergo daily wound care. (DE#73, p. 15;
Poveda Affid.). On July 6 Dr. Poveda authorized, for three more
days, a continuation of the Tylenol #3 that he earlier had pres-
cribed. (Poveda Affid). On July 9, Poveda attended to Pitts at the
infirmary. Poveda examined the wound, found that there was "better
coloration, Pinker," and "no visible pus;" noted Pitts' comment
that today "is doing much better;" ordered antibiotics and Tylenol
#3 for an additional week; and followed up on the request for Pitts
to see Dr. Ovadia. (DE#73 at p.13; Poveda Affid.). It was later
confirmed that Pitts had an appointment scheduled with Dr. Ovadia
in two days, on July 11, 2007. (Poveda Affid.).

     In his Affidavit (DE#61-5), Dr. Ben R. Thebaut, M.D., who
states that he is board certified in orthopedic surgery, and that
he reviewed records pertaining to Pitts' case, including DOC
records, Larkin Hospital records, and Pitt's deposition transcript,
opines that Dr. Poveda provided clinically appropriate assessment
and treatment to Michael Eugene Pitts. Thebaut states that this
included best efforts to provide the necessary and appropriate
medical care and to obtain the orthopedic specialist consultation
required to treat Pitts' injury; and appropriate and timely post-
surgical care including provision of pain medication and antibiotic
therapy to treat an infection of the surgically repaired finger
until such time that the post surgery consultation with the Surgeon
could be conducted). A review of the rest of the record leads to
the conclusion that Dr. Poveda was not deliberately indifferent.

     With regard to Pitt's first claim, of alleged delay in
performing the surgery, the record, as discussed supra, reveals the
reasons why it was not performed immediately, and further reveals
that there is no showing of a causal connection between Dr. Poveda
and the nearly 9-week delay about which Pitts complains. Apart from
Pitts' own belief that the surgery should have been performed
sooner, there is no evidence of record to establish that Dr. Poveda

perceived that immediate surgical intervention was necessary, that if it was not none Pitts would be at risk of serious harm, and that Poveda nonetheless failed to fast track the surgery which the Orthopedist, Dr. Ovadia, himself had not scheduled as an emergency.

Similarly, with respect to the second claim that Pitts' hand was not properly cared for during the two week period after the June 21 surgery, and was discovered to be infected on July 5, Pitts has not brought forth evidence to establish a causal connection between Dr. Poveda and the deprivation alleged. The record, including Pitts' exhibits, does not indicate that Dr. Poveda had involvement in Pitts' post-surgical care prior to July 6, 2007, when he authorized additional pain medication, and July 9, 2007 when he saw Pitts at the jail infirmary. As noted, <u>supra</u>, the record shows that on July 9, 2007 [4 days after the ARNP examined Pitts on 7/5 and 3 days after Dr. Aguilar saw/treated him on 7/6] Dr. Poveda examined Pitts' hand, to evaluate his condition. As Poveda states in his Affidavit, he then ordered additional pain medication and antibiotics, and followed up to make sure that the post-operation appointment for Pitts to see the surgeon, Dr. Ovadia, had been scheduled.  The record is devoid of evidence that Dr. Poveda was involved in any failure to conduct proper post-surgical care of Pitts' hand. [At deposition, Pitts acknowledged that Dr. Poveda did not see him during the two weeks immediately following the surgery. <u>See</u> T/91]. The record shows that when Pitts was referred to Poveda for evaluation at the clinic on 7/9 Poveda did not ignore Pitts or his serious medical needs. Rather, it shows that Dr. Poveda examined Pitts' hand and determined that the surgical wound looked improved, and that Pitts himself told Poveda that he felt better. Poveda determined that Pitts was scheduled to see the Orthopedist two days later on 7/11. There is no evidence of record that during the post-surgical period Poveda failed to provide necessary care; nor evidence to suggest that Poveda when providing care during the post-surgical period perceived that Pitts' condition required some emergency intervention which was necessary but not provided.

Finally, with respect to Pitts' claim that nothing was done to alleviate his pain, the record, including Pitts' own exhibits, Dr.

13

Poveda's Affidavit, and Pitts' statements at deposition, demon-
strate that the defendant Dr. Poveda was not deliberately indif-
ferent to Pitts' pain. Pitts alleged in his complaint that he was
in constant pain, 24 hours a day, 7 days a week for the 9 weeks
between his injury and the surgery. Pitts also has alleged that he
submitted grievances to both the Warden's Office and the Medical
Department complaining that he was in pain. In support of his
allegation of uncontrolled pain, Pitts has stated in his Response
opposing the defendants' motions, that during the 13 day period
that he was in confinement (starting on or about April 25), the
nursing staff did not distribute his pain medications. (DE# 72).
There is no evidence of record, however, that Dr. Poveda person-
ally received any such a grievance from Pitts about pain and yet
failed to act. The alleged 13 day period of confinement occurred
prior to Poveda's first contact with Pitts (which was on May 10).
Pitts acknowledged at deposition that although some doses may have
been missed, he did in fact receive pain medications between the
time of his injury and the surgery (see T/59-62, 69-74, 80 includ-
ing when his was in confinement (see e.g., T/58, 65-66), and as
discussed, supra, during the period that followed the surgery.  The
record, including Poveda's affidavit, demonstrates that on several
occasions Poveda was contacted by ARNP Dwares or other members of
the nursing staff, and that based on their examinations and
assessments of Pitts Dr. Poveda prescribed pain medication and/or
antibiotics. On other occasions, when he was called upon/scheduled
to personally examine Pitts, both before and after surgery, he did
the same.  In sum, the record is devoid of evidence of any instance
or instances in which Dr. Poveda was made aware of the need for
medication to control Pitts' pain, and that being aware of that
need he refused to take steps to alleviate his discomfort.

## 2.  Warden Harris

The gravamen of the plaintiff Pitts' complaint against the
defendant Warden, David Harris, construed liberally, is that his
injury/serious medical need was not timely addressed, resulting in
permanent injury, and that Pitts was in pain for a lengthy period.

The record includes plaintiff's statements at deposition, when

he was asked what was the basis for his suit against Harris.  The first time he was asked, Pitts stated that he "made the institution aware, Warden Harris specifically, that I had a serious medical injury that needed treatment and basically there was nothing that was being done about it. And because of the delay, I now have permanent injury." (T/119).  The second time that Pitts was questioned about the basis for his complaint against Warden Harris, he was asked, "What is the factual basis to show that Warden Harris was deliberately indifferent to your injury?" (T/132).  Pitts responded: "I believe that because I continually made the warden's office aware -- not the warden himself, but those responsible in the warden's office – that they knew or should have known of the need for medical attention for my serious medical need." (T/132).  Counsel followed up, asking, "And that's your basis for including Warden Harris in this lawsuit?" (T/132), and Pitts responded, "In a nutshell." (Id.).

As was the case for Dr. Poveda, the plaintiff Pitts has not proffered evidence establishing that between the time of his injury and the filing of the July 9, 2007 complaint, Warden Harris, himself, was made aware through grievances, that he was in pain, which was not being treated.  The record reveals, as discussed, supra, that Pitts had received ongoing treatment and diagnosis, including initial splinting and immobilization of his hand with a sling, physical examination, x-rays, medication for pain and antibiotics, referral to an Orthopedic specialist, and surgery, with followup by the Orthopedist. The record indicates that the provision of medical care was by medical staff from MHM Solutions, Inc.; and it is noted that Warden Harris is not a physician trained in medicine, who has knowledge or authority to provide medical care. In order to prevail on a claim of medical indifference against the defendant Warden Harris, the plaintiff Pitts must have brought forth evidence to make a showing that Warden Harris was aware of facts which indicated that, at one or more points in his diagnosis and course of treatment between April 21 and July 9, 2007, he (Pitts) had a serious medical need that was not being addressed, that Harris perceived that some action by him was necessary, that if he did not act Pitts would be placed at serious

15

risk of harm, and that having drawn that conclusion Harris still failed to act. <u>Campbell</u> <u>supra</u>, at 1364; <u>Cottrell</u>, <u>supra</u>, at 1491. This, plaintiff Pitts has not done. The plaintiff Pitts has failed to establish the existence of a causal connection between the defendant Warden Harris and a deprivation of his statutory or constitutional rights based on the deprivations alleged. It is clear that the defendant Harris is therefore entitled to summary disposition of the amended complaint, in his favor.

### III.   CONCLUSION

For the above stated reasons it is therefore recommended that: 1) the defendant Poveda's Motion for Summary Judgment (DE# 61) be granted; 2) the defendant Harris' Motion for Summary Judgment (DE# 62) be granted; and 3) this case be closed.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: November 5<u>th</u>,   2008.

_____
UNITED STATES MAGISTRATE JUDGE


cc:   Michael Eugene Pitts, <u>Pro Se</u>
      8551 S.W. 22 Street
      Davie, FL 33324

      David J. Glantz, AAG
      Office of the Attorney General
      Civil Litigation Division
      110 S.E. 6th Street, 10th Floor
      Fort Lauderdale, FL 33301

      Carmen Y. Cartaya, Esquire
      McINTOSH, SAWRAN, PELTZ & CARTAYA, P.A.
      Biscayne Building
      19 West Flagler Street, Suite 520
      Miami, FL 33130